# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| DONALD ALDRIDGE, et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05-2966-STA-dkv |
| | ) | |
| CITY OF MEMPHIS and | ) | |
| LARRY GODWIN in his individual | ) | |
| capacity, | ) | |
| | ) | |
|     Defendants. | ) | |

## ORDER GRANTING DEFENDANT CITY OF MEMPHIS'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant City of Memphis's Motion for Summary Judgment, (D.E. # 171), filed on February 29, 2008. Plaintiffs responded in opposition on April 17, 2008. (D.E. # 182.) For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

Plaintiffs have brought this action against the City of Memphis (the "City") and Larry Godwin, Memphis Police Department ("MPD") Director of Police Services, in his individual capacity, alleging Breach of Contract, Due Process and Equal Protection violations under 42 U.S.C. § 1983, and age, race, and gender discrimination. Plaintiffs also allege interference with contract rights/business relationships and violation of civil rights against Defendant Godwin. Plaintiffs are police officers employed by the MPD who had attained the rank of Captain. Under the Memphis City Charter, promotion to Captain was automatic upon completion of thirty years of service. On February 18, 2005, Director Godwin announced the abolishment of the Captain rank in response to a budget crisis being suffered by the City of Memphis. Godwin advised the

Captains that they could either immediately retire at their current rank or return to their previous rank.

Nine of the twenty-six Plaintiffs in this case are African American, and three of them are female. The remainder are white males. African American Captains were not treated differently than white Captains at the time of the abolishment of the Captain rank in 2005 nor were female Captains treated differently than male Captains. Rather all Captains were treated the same with respect to Defendant's decision to abolish the Captain rank, and the abolishment of the rank had the same effect on all captains.

In an order entered February 21, 2007, the Court granted partial dismissal to Defendants as to Plaintiffs' due process claims based on City of Memphis Charter § 67 and claims of gender discrimination under § 1981. The Court also dismissed any § 1981 claims of race discrimination to the extent they were pled independently of § 1983. On December 27, 2007, the Court held, on cross-motions of the parties for summary judgment, that no due process claim arose from an implied contract for continued employment. On January 22, 2008, the Court granted the remainder of Defendant's Motion for Summary Judgment as to Plaintiffs' claims of breach of contract, violation of equal protection, and discrimination on the bases of race, gender and age. On February 1, 2008, Plaintiffs filed an Amended Complaint alleging breach of contract, Due Process and Equal Protection violations under 42 U.S.C. § 1983, age, race, and gender discrimination against all Defendants, and interference with contract rights/ business relationships, and violation of civil rights against Defendant Godwin.

## SUMMARY JUDGMENT STANDARD

Rule 56 (c) provides that a

> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.[1]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[2] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[3] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[4] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[5] Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [the] asserted causes of action."[7] Finally, the

---

[1] Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[2] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[3] *Celotex*, 477 U.S. at 324.

[4] *Matsushita*, 475 U.S. at 586.

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[6] *Celotex*, 477 U.S. at 322.

[7] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

"judge may not make credibility determinations or weigh the evidence."[8]

## ANALYSIS

### A. Breach of Contract

Count One of Plaintiffs' Amended Complaint is titled "Breach of Contract, Due Process and Equal Protection Violations." Plaintiffs assert that their relationship with the City is recognized by Tennessee law as being contractual in nature and that the City has breached the contract and breached its duty of good faith and fair dealing by demoting or causing the termination of Plaintiffs' employment as Captains without just cause and under false pretenses. Plaintiffs assert that they were entitled to due process before any adverse employment action was taken against them including a pre-hearing and a post-hearing, and that Defendant has violated Plaintiffs' due process rights by failing to afford them a hearing. Plaintiffs also allege that Defendant has denied them equal protection by refusing to allow them to continue in the rank of Captain. Plaintiffs further assert that the Deferred Retirement Option Plan ("DROP") was a contract between Plaintiffs and the City. On February 21, 2007, the Court granted partial dismissal as to Plaintiffs' due process claims. Then, in its December 27, 2007, Order, the Court held that no due process claim arose from an implied contract for continued employment between Plaintiffs and the City. On January 22, 2008, the Court granted Summary Judgment on Plaintiffs' breach of contract claim to the extent that it had survived the Court's previous orders. Thus, the Court has already dismissed all breach of contract claims and due process claims against Defendant. To the extent Plaintiffs' Amended Complaint asserts breach of contract claims or due process claims, Defendant's Motion for Summary Judgment is GRANTED for the reasons stated in the Court's previous Orders.

### B. § 1983 Claims

---

[8] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

In addition to Title VII, 42 U.S.C. § 1981 and §1983 provide remedies against employment discrimination on the basis of race.[9] "Although § 1981 confers certain rights, the statute itself does not provide a cause of action for race discrimination."[10] In *Jett v. Dallas Independent School District*, the United States Supreme Court held that when a state actor violates an individual's rights under § 1981, § 1983 provides the exclusive remedy.[11] That is, "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."[12] Accordingly, under *Jett*, a suit against a municipality for a violation of rights conferred under § 1981 must be brought pursuant to § 1983 and considered pursuant to § 1983.[13]

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."[14] In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law."[15] "Section 1983 is not the source of any substantive right, but merely provides a method

---

[9] *Daniels v. Bd. of Educ. of Ravenna City Sch. Dist.*, 805 F.2d 203, 207 (6th Cir. 1986) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975); *Poolaw v. City of Anadarko*, 660 F.2d 459, 462 (10th Cir. 1981)).

[10] *Malone v. Shelby County Gov't*, No. 04-2810, 2005 WL 2114053, at *2 (W.D. Tenn. Aug. 30, 2005).

[11] 491 U.S. 701, 731 (1989).

[12] *Jett*, 491 U.S. at 735.

[13] *Id.*

[14] 42 U.S.C. § 1983 (2008).

[15] *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

for vindicating federal rights elsewhere conferred."[16]

### 1. Race and Gender Discrimination

The prima facie case and the allocations of the burden of proof are the same for claims of discrimination under 42 U.S.C. § § 1981 and 1983 and Title VII.[17] The Sixth Circuit has noted that

> [a] plaintiff who alleges disparate treatment by a state employer is bringing essentially the same claim under Title VII as under § 1983. If there is liability under Title VII, there should be liability under § 1983. Similarly, if there was no discriminatory intent, there cannot be liability under either Title VII, on a disparate treatment theory, or § 1983.[18]

To establish a claim of race discrimination under § 1981, a plaintiff must show that "(1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)."[19] When a plaintiff attempts to prove intentional discrimination through circumstantial evidence, the court is to follow the burden-shifting framework of *McDonnell Douglas-Burdine* used in Title VII cases.[20]

In order to establish a prima facie claim of racial discrimination under Title VII, a plaintiff must prove four elements: 1) that he is a member of a protected class; 2) that he was qualified for the job; 3) that he suffered an adverse employment decision; and 4) that he was replaced by a person outside the protected class or treated differently than similarly situated

---

[16] *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

[17] *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

[18] *Grano v. Dep't of Dev. of City of Columbus*, 637 F.2d 1073, 1082 (6th Cir. 1980).

[19] *Amni v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006).

[20] *Id.*

non-protected employees."[21] If the plaintiff makes his prima facie case, then the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions.[22] If the employer meets this burden, the plaintiff must show by a preponderance of the evidence that the reasons offered by the employer were actually a pretext for discrimination.[23] "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."[24]

In this case, as discussed in the Court's January 2008 Order, Plaintiffs have failed to demonstrate the forth prong of the prima facie case, that is, that they were treated differently than similarly situated employees outside the protected class. The Court held that Plaintiffs failed to show that protected black and female Captains were treated differently from nonprotected white and male Captains. The Court pointed out that all Captains were treated the same, regardless of the time period or the racial/gender make-up of the rank at any particular time. The Court also determined that Defendant had legitimate, non-discriminatory reasons for abolishing the rank of Captain, and that Plaintiffs failed to prove those reasons were pretextual. Therefore, as with Plaintiff's Title VII claims, Plaintiff's § 1981 claims filed pursuant to § 1983 cannot survive summary judgment. Thus, Defendant's Motion is GRANTED.

**2. Equal Protection**

Plaintiffs have also asserted violations of the Equal Protection clause under § 1983. The

---

[21] *Di Carlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

[22] *Tex. Dep't of Cmty Affaris v. Burdine*, 450 U.S. 248, 253 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[23] *McDonnell Douglass*, 411 U.S. at 804.

[24] *Burdine*, 450 U.S. at 253 (citing *Bd. of Tr. of Keene State Coll. v. Sweeny*, 439 U.S. 242, 25 n. 2 (1978)).

7

Equal Protection Clause requires that similarly situated persons be treated alike.[25] For two employees to be similarly situated, the plaintiff must show that the relevant aspects of his employment situation are "nearly identical" to those of the comparison employee whom he alleges was treated more favorably.[26] "The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances."[27] In evaluating whether a comparison employee is similarly situated to a plaintiff, a court should "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee."[28]

### a. Similarly Situated Comparators

To show that they were treated differently than similarly situated employees, Plaintiffs compare themselves to individuals promoted to Captain during the seventy eight years prior to Defendant's abolishment of the Captain rank in 2005. The Court has already rejected this argument holding that all Captains were treated the same, regardless of time period. Plaintiffs also attempt to offer as a comparator group patrol officers who had previously received step increases in their salaries based only on years of service and probationary employees who received increased salaries based only on years of service. As proof that these comparator groups are similarly situated to Plaintiffs, Plaintiffs state that the "groups are similar in all relevant aspects of their respective employment circumstances because all were currently employed at the same time and all received salary increases based only on years of service and were permitted to continue to receive those salary increases based on their satisfactory performance of their assigned duties. However, Plaintiffs were the only employees to have their

---

[25] *Plyler v. Doe*, 457 U..S. 202, 216 (1982).

[26] *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

[27] *Id.* (quoting *Ruth v. Children's Med. Cent.*, 1991 U.S. App. LEXIS 19062, AT *22 (6th Cir. Aug. 8, 1991)).

[28] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

8

salaries reduced." This statement, however, does not prove that the comparator groups were similarly situated to Plaintiffs. Plaintiffs have not shown that the Captains' job responsibilities including any supervisory responsibilities over subordinate officers or other relevant aspects of their employment were nearly identical to the comparator groups. Plaintiffs had the burden to prove that the relevant aspects of their employment were nearly identical to those of the comparison employees, and Plaintiffs have not carried that burden.

### b. Rational Basis

Additionally, Plaintiffs' Equal Protection claims cannot stand as Defendant had a rational basis for abolishing the Captain rank. Governmental action is presumed valid if the classification of groups is rationally related to a legitimate state interest.[29] Under a rational basis review, the government action is entitled to a strong presumption of validity, and the plaintiffs "have the burden 'to negative every conceivable basis which might support it.'"[30] Under this standard, a government agency whose action is challenged on equal protection grounds "has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'"[31] A plaintiff can only make out an equal protection violation if he shows that the governmental action is "irrational."[32]

In this case, the Court finds that Defendant had a rational basis for eliminating the rank of Captain. Defendant has identified its reasons for abolishing the rank as 1) Captains obtained their promotion based on thirty years of service while other employees were promoted based on merit; 2) many of the Captains were performing the jobs of Patrolmen or Sergeants when they

---

[29] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

[30] *Fed. Commc'n Comm'n v. Beach Commc'n, Inc.*, 508 U.S. 307, 314–15 (1993).

[31] *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 790 (6th Cir. 2005) (citing *Beach Commc'n, Inc.*, 508 U.S. at 315 (1993)).

[32] *Id.* (citing *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005)).

9

were promoted, but were receiving a salary equivalent to Majors; 3) the Captain rank was not operationally necessary; and 4) Director Godwin believed that eliminating the Captain rank would result in cost savings to the taxpayers. The Court has already determined that Defendant's reasons for abolishing the Captain rank were legitimate and non-discriminatory. Therefore, Plaintiffs have not carried their burden of negativing every conceivable or plausible basis supporting Defendant's actions.

### c. Ill will and Malice

Plaintiffs also argue that Defendant's actions were motivated by ill will against Plaintiffs. Plaintiffs argue that Director Godwin possessed animus against Captains, and his decision to abolish the rank was motivated by ill will and malice. A plaintiff may demonstrate that governmental action lacks a rational basis "by 'negativing every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will."[33] "The desire to effectuate one's animus against [an unpopular group] can never be a legitimate governmental purpose, [and] a state action based on that animus *alone* violates the Equal Protection Clause."[34] As discussed above, however, Defendant has already shown rational reasons for its decision to abolish the Captain rank. Therefore, even assuming that Director Godwin had ill will against the Captains, the decision to abolish the rank was not based on ill will alone, but on reasons rationally related to a legitimate government interest. Therefore, Plaintiff's Equal Protection claims cannot survive summary judgment. Defendant's Motion is GRANTED.

## C. Age Discrimination

Plaintiffs next allege that Defendant's abolishment of the Captain rank had a disparate

---

[33] *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005) (citing *Klimik v. Kent County Sheriff's Dep't*, 91 Fed. Appx. 396, 400 (6th Cir. 2004)).

[34] *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006) (citing *Stemler v. City of Florence*, 126 F.3d 856, 873–74 (6th Cir. 1997)) (emphasis added).

10

impact against them in violation of the Age Discrimination in Employment Act ("ADEA") and the Tennessee Human Rights Act ("THRA"). Courts analyze THRA claims according to the same standards as ADEA claims.[35] The ADEA provides that

> [i]t shall be unlawful for an employer--
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .[36]

Disparate impact claims are available under 29 U.S.C. § 623(a)(2), but not under § 623(a)(1).[37] "[T]he text of section (a)(2) focuses on the effect of an employer's practices on employees generally, which, unlike section (a)(1), gives rise to a disparate-impact claim."[38] When an employer's facially neutral policy has an adverse effect on a protected class, the proper analysis is disparate impact under § 623(a)(2).[39] In order to show disparate impact, a plaintiff need not show intentional discrimination, but must "demonstrate a connection between the challenged practice and the resulting disparities between protected and non-protected classes."[40] A Plaintiff establishes a prima facie case under a disparate impact theory when he identifies the specific employment practice at issue and proves through relevant statistical analysis that the practice has

---

[35] *See* Tenn. Code Ann. § 4-21-101 (2008); *Southmayd v. Apria Healthcare, Inc.*, 412 F. Supp. 2d 848 (E. D. Tenn. 2006).

[36] 29 U.S.C. § 623(a) (2008).

[37] *Smith v. City of Jackson*, 544 U.S. 228, 236 n.6 (2005); *EEOC v. Allstate Ins. Co.*, 528 F.3d 1042, 1047 (8th Cir. 2008).

[38] *Allstate*, 528 F.3d at 1047 (citing *Smith*, 544 U.S. at 236 n.6).

[39] *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)). *See also Smith v. City of Jackson*, 544 U.S. 228, 236 n.6 (2005); *EEOC v. Allstate Ins. Co.*, 528 F.3d 1042, 1047 (8th Cir. 2008).

[40] *Id.* (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989)).

an adverse impact on a protected group.[41]  "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such impact.  Rather, the employee is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'"[42]

### 1.  Facially Neutral Employment Policy or Practice

To establish the first element of the prima facie case of disparate impact age discrimination, a plaintiff must identify a facially neutral employment policy or practice that has a disparate impact on the protected group.  Plaintiffs identify the abolishment of the Captain rank as the specific employment practice responsible for the disparate impact on older workers.  Defendant, on the other hand, argues that the abolishment of the Captain rank falls under 29 U.S.C. § 623(a)(1), and therefore Plaintiffs cannot maintain a disparate impact claim to challenge the abolishment.  Defendant asserts that because Plaintiffs claim that the abolishment of the rank of Captain resulted in their reassignment and/or constructive discharge and a reduction of their compensation, their claim should be analyzed under § 623 (a)(1) not § 623 (a)(2), and thus a disparate impact claim cannot stand.

In determining whether Plaintiffs can maintain a disparate impact claim, the Court must first determine whether the abolishment of the Captain rank qualifies as a facially neutral employment policy.  The abolishment of a specific rank does not fit the typical mold of an employment "practice or policy" because it only affects one group of employees–here, the Captains.

---

[41]  *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005); *see also Butts v. McCullough*, 237 F. Appx. 1, 7 (6th Cir. 2007) (applying statement of prima facie case set forth in *Isabel* to disparate impact claim under ADEA).

[42]  *Allen v. Sears Roebuck and Co.*, 2007 WL 2406921, at *4 (E.D. Mich. Aug. 20, 2007) (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)) (internal quotation marks omitted) (emphasis in original).

The Eighth Circuit recently addressed a similar situation in *EEOC v. Allstate*.[43] In that case, the court held that a rehire policy that affected only former employee-agents could be challenged under § 623(a)(2).[44] The district court stated that "the most logical approach is to treat the rehire policy as part of the Reorganization Plan which [affected] all employee-agents."[45] Based on this reasoning, the Eighth Circuit determined that the rehire policy qualified as an employment policy, and a disparate impact claim under § 623(a)(2) could stand. The circuit court was persuaded by the fact that the rehire policy was implemented as part of an employment policy and that it served to deprive a specific group of employees of employment opportunities with the defendant.[46] The court did not find that the elimination of the employee-agent position was a disparate impact violation.[47] Rather, it found that the disparate impact claim was based on the employer's implementation of the rehire policy.[48]

Just as the elimination of the position of employee-agent in *Allstate* could not be challenged under a disparate impact theory, likewise the elimination of the Captain rank does not create a disparate impact violation. In order to fall under § 623(a)(2), the employment practice or policy must "limit, segregate, or classify . . . employees in any way which would deprive or tend to deprive any individual of employment opportunities."[49] Here, the abolishment of the rank of Captain was not part of an employment plan that applied to all employees. Rather, it only applied to the Captains. Therefore, the action more properly falls under § 623(a)(1) which states that it is unlawful for an employer to "discriminate against any individual with respect to

---

[43]     528 F.3d 1042 (8th Cir. 2008).

[44]     *Id.* at 1048.

[45]     *EEOC v. Allstate Ins. Co.*, 458 F. Supp. 2d 980, 990 (E. D. Mo. 2006).

[46]     *Allstate Ins. Co.*, 528 F.3d at 1048.

[47]     *Id.* at 1045.

[48]     *Id.*

[49]     *Id.* (quoting 29 U.S.C. § 623(a)(2)).

13

his compensation, terms, conditions, or privileges of employment . . . ." As the abolishment of the rank affects the compensation, terms, conditions, and privileges of employment, the action must be evaluated under § 623(a)(1) which does not permit disparate impact claims. Defendant's Motion for Summary Judgment must, therefore, be GRANTED.

### 2. Statistical Evidence

Even if the Court were to analyze Plaintiffs' claim under § 623(a)(2), Plaintiffs still could not make out a prima facie case of age discrimination under a disparate impact theory because Plaintiffs' statistical evidence is not relevant to show an adverse impact. The second step of establishing the prima facie case is for a plaintiff to prove through *relevant* statistical analysis that the facially neutral employment practice has an adverse impact on a protected group. As proof that this action had a disparate impact on older workers, Plaintiffs state that by abolishing the Captain rank, 100% of the employees impacted by the decision were over the age of forty while 0% were under that age. Plaintiffs further state that the average age of the Captains was 56.2 while the average age of all other ranks was 37.81. Plaintiffs also point out that the MPD employed 826 employees over the age of forty (39.9% of the workforce) and 1245 below the age of forty (60.1% of the workforce). Of the 826 employees over the age of forty, 11.25% (93 employees) were impacted by the abolishment of the Captain rank. Of the 1245 employees below the age of forty, 0% were impacted. Plaintiffs' expert determined that this disparity was statistically significant and extremely unlikely to have occurred by chance.

Plaintiffs' statistical analysis compares the Captains to several other groups. First, Plaintiffs compare all employees affected by the decision who are over the age of forty with those under the age of forty and note that 100% of employees impacted by the decision were over forty. The Court finds that this comparison is not relevant to show disparate impact, however, as by necessity, all employees affected by the decision, the Captains, had to be over the age of forty. The City Charter required thirty years of service to be promoted to Captain, thus ensuring that every Captain was within the protected class. Furthermore, Defendant's action

only affected Captains, no other rank. Therefore, this statistical difference is expected and does not lead to an inference of discrimination. Second, Plaintiffs compare those employees impacted by the decision and those who were not. Plaintiffs assert that this is an appropriate comparison because all employees were potentially subject to demotion and to a reduction in salary as part of the budget crisis. Again, Plaintiffs note that of the 826 employees over age forty 11.25% (93) were impacted by the decision to abolish the Captain rank while of the 1245 employees under forty, none were impacted. The Court finds that this comparison is also not relevant as the City's abolishment of the rank of Captain only applied to Captains who, by the terms of the rank, must be over the age of forty, and the decision did not apply across the board to all ranks. Third, Plaintiffs compare the Captains to the acting Lieutenants. Plaintiffs note that the average age of the Captains (56.52) was higher than the average age of the acting Lieutenants (42.11). Fourth, Plaintiffs compare the Captains to the 120 promoted Lieutenants. Plaintiffs assert that this comparison is relevant because these promoted Lieutenants were permanent replacements for the Captains. Plaintiffs state that the average age of the Captains (56.52) was higher than the average age of these promoted Lieutenants (41.25). The Court finds, however, that these statistical differences are not relevant to show disparate impact as it is to be expected that officers holding a senior rank would be older than officers holding a subordinate rank. Furthermore, Defendant asserts that Lieutenant is not a proper comparison rank as Lieutenants were subordinate to Captains, were paid less than Captains, and largely had different duties and responsibilities than Captains. Thus the Court finds that Plaintiffs have not shown that Defendant implemented a facially neutral policy or practice that had a statistically significant disparate impact on older employees. Because Plaintiffs have not established a prima facie case of disparate impact age discrimination, Defendant's Motion for Summary Judgment is GRANTED.

### 3. Reasonable Factors Other than Age

Even if Plaintiffs had made out a prima facie case of age discrimination, Defendant's

Motion must still be granted as Defendant has shown that its actions were based on a reasonable factor other than age ("RFOA"). Once a plaintiff has established a prima facie case, the employer can rebut the inference of discrimination by asserting that its neutral policy was based on a reasonable factor other than age.[50] The United States Supreme Court recently held that the defense of RFOA is an affirmative defense on which the employer bears both the burden of production and the burden of persuasion.[51] Thus, under *Meacham*, the employer must show that the factor other than age was a reasonable one.[52] Under this standard,

> the more plainly reasonable the employer's "factor other than age" is, the shorter the step for that employer from producing evidence raising the defense, to persuading the factfinder that the defense is meritorious. It will be mainly in cases where the reasonableness of the non-age factor is obscure for some reason, that the employer will have more evidence to reveal and more convincing to do in going from production to persuasion.[53]

In this case, Defendant has met this burden. The MPD determined that it had no need for a management level rank achieved solely by length of service, and Director Godwin decided to abolish the rank of Captain because the position was not operationally necessary. He also estimated that abolishing the Captain rank could result in a savings of $1,400,000. "While there may have been other reasonable ways for the City to achieve its goals, the one[s] selected w[ere] not unreasonable."[54] The reasonableness inquiry does not require a defendant to show that there are no other ways for it to achieve its goals that do not result in a disparate impact on a protected class.[55] In its January 22, 2008, Order Granting Defendant's Motion for Summary Judgment, the

---

[50] *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1200 (10th Cir. 2006); *see also Adams v. Lucent Tech., Inc.*, 2007 WL 14593, at *6 (S.D. Ohio Jan. 3, 2007).

[51] *Meacham v. Knolls Atomic Power Lab.*, 128 S. Ct. 2395, 2401 (2008).

[52] *Id.* at 2403.

[53] *Id.* at 2406.

[54] *Smith v. City of Jackson*, 544 U.S. 228, 243 (2005).

[55] *Id.*

Court found that Plaintiffs had failed to prove that Defendant's reasons were a pretext for discrimination. The Court now finds that Defendant's RFOAs are plainly reasonable, and Plaintiffs have not demonstrated that genuine issues of material fact exist as to whether Defendant's RFOAs were reasonable. For this reason as well, the Court GRANTS Defendant's Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Second Motion for Summary Judgment. The Clerk will enter judgment accordingly.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: July 31st, 2008.